FEASTER v. RICHLAND COTTON MILLS.

1. DAMAGES.—The measure of damages for refusal to permit performance of an executory contract is the difference between the contract price and what it would have cost to perform the contract.

2. CHARGE.—A request to charge specific words may be properly charged by the use of more general terms.

3. EVIDENCE—DAMAGES.—Where the issue is how much a certain piece of work should have reasonably cost, testimony as to its actual cost is irrelevant. *Divided Court.*

Before WATTS, J., Richland, June, 1896.   Affirmed.

Action by John G. Feaster against Richland Cotton Mills, for damages for refusal on part of defendant to permit him to complete his contract to do certain carpenter work in the erection of the mill plant.  Judgment for plaintiff.  Defendant appeals.

*Mr. R. W. Shand,* for appellant, cites: *On the first exception:* 4 McCord, 246–249; 2 Speer, 149; 83 N. Y., 396; 61 N. W. R., 1132; 59 Id., 800; 46 Kan., 354; 78 Mich., 261; 30 L. R. A., 33; 91 U. S., 651; 1 Mo. App., 357; 63 N. Y., 9; 13 How., 307; 8 Wall, 77; 7 Hill, 61; 123 N. Y., 388; 60 Mo. App., 72; 85 Tenn., 345; 99 Ala., 345; 32 S. W. R., 920; 7 Hill (N. Y.), 67; 47 Pa. St., 393; 48 N. J., 404; 11 Wall, 440; 38 S. C., 288; 30 S. C., 616.   *New trial must be had when relevant testimony which might have influenced jury is ruled out:* 42 S. C., 121; 17 S. C., 134.

*Mr. Jno. P. Thomas, jr.,* contra, cites: *On exceptions 1 and 3:* 63 N. Y., 25; 7 Hill, 61; 110 U. S., 334; 94 U. S., 218; 54 Cal., 605; 68 Me., 133; 52 Wis., 255; 54 Cal., 154; 29 Mich., 431; 28 Minn., 158; 33 Id., 45.

Nov. 22, 1897.   The opinion of the Court was delivered by

MR. JUSTICE POPE.   The plaintiff, by his complaint, containing three causes of action, sought to recover $1,618.40 from the defendant.   The issues under the pleadings and proofs were submitted to a jury, whose verdict was for $790, in favor of the plaintiff.

After judgment was entered thereon, the defendant appealed therefrom on three grounds, to wit:  1. Because his Honor erred, it is respectfully submitted, in not permitting defendant to introduce testimony to show what it cost defendant to complete the Feaster contract after Feaster was dismissed.   2. Because he further erred in refusing to charge, as requested by defendant, "That if the jury believe the work called for from plaintiff was not done in a true

and workmanlike manner, that the defendant then had the right to terminate the contract." 3. Because his Honor further failed to charge, as requested by defendant, "That if the plaintiff was improperly discharged, the value of the work done at a reasonable price would be all that he could claim from the defendant."

We will dispose of those exceptions in their inverse order. The third exception cannot be sustained, for the Circuit Judge, in his charge in relation thereto, said: "I do not charge you in those words," meaning the words of the request; "I prefer the law quoted in another case, and give this as the law: 'The measure of damages in a case of this sort—it secures to the injured party as a compensation only such advantages as the parties must be deemed to have had in their minds in making the agreement, and excludes all contingent and uncertain profits, everything that may not reasonably be supposed to have been within the contemplation of the contracting parties, and would not naturally follow the breach. The party who has been wrongfully deprived of the gains and profits of an executory contract, may recover as an equivalent, and by way of damages, the difference between the contract price, the amount which he would have earned and been entitled to recover on performance, and the amount which it would have cost him to perform the contract.'" It is very evident, when we regard the language of the Circuit Judge in this part of his charge, that he has correctly set forth the proposition of law in answer to the request of plaintiff. Indeed, the request to charge, itself, failed to express exactly what was in the mind of appellant's counsel, as the correct law, for we cannot for a moment imagine that appellant would contend, that if John G. Feaster was improperly discharged by the Richland Cotton Mills, thus preventing him from completing his contract with such mill, the value of the work, done at a reasonable price, would be all he could claim of the plaintiff, thus leaving it in doubt with the jury whether the appellant referred to the work which had

10—51

already been performed by such Feaster before his discharge, as "the work done," or whether such appellant referred to the work to be done to complete the contract, as "the work done." The Circuit Judge preferred to treat the request in the last light, and hence it was necessary that he should use his own language to explain the law in this particular. This exception is overruled.

As to the second exception. We find, on examination of the "Case," the Circuit Judge did not say in his charge thereon that it was not good law, but merely that he preferred to say to the jury that if the plaintiff failed in the discharge of the duty he had voluntarily assumed when he signed the contract (and this contract was in evidence), that then the defendant could rightfully have discharged such contractor (Feaster). It may be that the Circuit Judge saw that while in this contract the words, that the work should be done by Feaster "in a true and workmanlike manner," did occur, he also saw that such "a true and workmanlike manner" was conjoined with the words "according to the general scope and design of the plans and specifications for said plant now in the office of W. B. Smith Whaley & Co.," &c., and hence he preferred to make his charge a little more general than the words of the request were. The whole includes its parts, and as the duty of Feaster to do his work in a true and workmanlike manner was a part of Feaster's duty under said contract, it was fully covered by the charge of the Judge as made. We must, therefore, overrule this exception.

Lastly, we will consider the first exception, which, in our judgment, presents a nice and difficult question, and we may remark that it has called forth some considerable effort on our part to reach a conclusion. In order that it may be understood, we will reproduce some of the facts of the case. John G. Feaster was a contractor, and as such, in the month of February, 1895, entered into a written contract with the Richland Cotton Mills to do the woodwork on the buildings for said mill, with certain ex-

ceptions, for the price of $3,000.   He commenced work in
March, 1895, and on the 22d June, 1895, he was discharged
by the Richland Cotton Mills, and thus prevented from
completing his contract.   He had finished a goodly part of
his work, and had received $1,560 in part compensation.
After Feaster's discharge, the defendant mill secured a force
of carpenters and completed the work before the 10th day
of September, 1895.   On that day, 10th September, 1895,
this action was commenced.   Mr. Feaster contended that
he was wrongfully discharged; while the Richland Cotton
Mills, on the other hand, contended that he was rightfully
discharged.   These issues were before the jury.   Both sides
contended that a different rule of law would apply in the
event the jury found that Feaster was rightfully discharged
from that applicable in the event the jury found that Feas-
ter was wrongfully discharged.   Of course, all testimony
relevant to these issues should go to the jury.   The defend-
ant contended that it had the right to show what the rea-
sonable cost of completing the buildings was by testimony
showing what it had actually cost the defendant to com-
plete all this work.   This is part of the colloquy on this
subject: "*Mr. Shand:* I know of no better test of what it
would reasonably cost to complete a work than what it rea-
sonably did cost to complete it, by the use of reasonable
means and proper hands, &c.   *Mr. Thomas:* We object as
to the number of hands that were employed.   We think
the question is, what it reasonably would have cost to com-
plete the work.   *The Court:* What would it reasonably
cost to have completed the contract?   I will allow the wit-
ness to testify to that.   Not what he paid, but what it
would reasonably have cost to complete the contract that
both parties entered into."   The Court ruled out the testi-
mony of defendant's witness, W. B. Smith Whaley, when
he offered to testify as to the amount paid out to complete
the job, as well as the number of hands employed for that
purpose, &c.   And also the testimony of defendant's wit-
ness, J. S. Moore, Esq., who, as treasurer, had made all the

payments for the completion of the work. It may as well be stated at this point that we entirely agree with the Circuit Judge that when a contractor, after a partial compliance with his contract, is wrongfully discharged by the owner of the property, and a partial payment had been made of the compensation under the contract, that the measure of such contractor's recovery is the whole price of the contract, less what he has received thereof, and also less the cost of completing the work. For illustration of our meaning we will say: Suppose Feaster had contracted to do the whole work for $3,000, and suppose he had been paid $1,560 in part of $3,000, and was then discharged, and then suppose it cost $1,000 to complete the work, then Feaster would be entitled to receive $440. It is apparent that the difficulty is in reaching the $1,000, or the true amount of cost in completing the work. It appears from the "Case" that at the trial of the cause at bar, "There was no contest over the amount of the contract price for the work agreed to be done, nor as to the amount which had been paid plaintiff for the work done up to termination of contract. There was, however, a considerable amount of evidence introduced upon both sides as to what it would reasonably have cost to complete the contract between plaintiff and defendant, and full scope and latitude were given to both sides upon this question." We cannot see how full scope and latitude has been afforded the defendant, if the testimony he offered was relevant to the issue. The proposition is to prove what a given piece of carpenter's work is worth. Now, under the theory of appellant, which the Circuit Judge adopted, the cost of such work must be ascertained by expert testimony directed to the point of how much such work ought to cost. We admit that the testimony of experts was relevant testimony, but we cannot admit that proof of the actual cost of such work, when it is done, is not competent testimony also. The latter is not conclusive. Like all testimony, it is to be subjected to cross-examination and testimony in reply thereto. Our

views may be illustrated thus: It is desired to ascertain the number of acres in a given territory. It is competent to take the testimony of experts, who have not actually surveyed the given territory of land, as to its acreage. But why will not the testimony of one who has made an actual survey of the land in question be also admissible? Such testimony must, of course, be subject to the usual tests. If the testimony of W. B. Smith Whaley and J. S. Moore was directed to establish the actual cost of such work, as it was, we think the defendant has suffered by its exclusion, and hence there is reversible error.

According to the views I entertain, our judgment should be: It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and that the case be remanded to the Circuit Court for a new trial; but inasmuch as the Court is equally divided in opinion, under the Constitution of the State, the judgment of the Circuit Court is affirmed.

MR. JUSTICE GARY *dissents.*

MR. JUSTICE JONES, *dissenting.* I am unable to concur in the views of Mr. Justice Pope, as to the first exception, because of the following express statement in the "Case:"

"There was, however, a considerable amount of evidence introduced upon both sides as to what it would reasonably have cost to complete the contract between plaintiff and defendant, and full scope and latitude were given to both sides upon this question." This being so, the ruling of the Circuit Judge must be interpreted consistently with this admitted fact. It is admitted on all sides that appellant was only entitled to prove what it would reasonably cost to complete the work—that was the issue before the jury, not what was actually paid for the work. The amount actually paid may have been too much or too little, and whether too much or too little, would have to be tested by what was reasonable under the circumstances. In the last analysis, the question turned upon what was the reasonable cost, and as to that issue, as stated, *full scope and*

*latitude* was given to appellant. We are bound, therefore, to assume that the ruling of the Circuit Judge was consistent with such statement. Evidence of what was actually paid for the work was not admissible as independent evidence of what the work should reasonably have cost, and this we apprehend was the ruling of the Circuit Judge. At any rate, if appellant was not limited in his proof of what the work should reasonably cost, and it is conceded he was not, there is no reason to disturb the verdict of the jury after such full and fair trial.